J-S12021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANGEL RIVERA :
:
Appellant : No. 2194 EDA 2023

Appeal from the PCRA Order Entered July 26, 2023
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002658-2010

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 2, 2024**

Angel Rivera ("Rivera") appeals from the order dismissing his serial

petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]

Additionally, Rivera has filed an application for relief in which he seeks leave

to amend his PCRA petition. We affirm the dismissal order and deny the

application.

In January 2011, Rivera entered a negotiated guilty plea to third-degree

murder and attempted murder arising from a shooting motivated by a drug-

deal. The factual basis of the plea was as follows:

> [I]n May [] 2010, members of the Allentown Police
> Department were called to respond to . . . the area of 8th and
> Turner Streets [] for a report of a shooting victim. There[,] they
> found Francisco Fordham [("Fordham")], who was sitting on the
> steps bleeding.

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

He was taken via ambulance to the Lehigh Valley Hospital Center. While the police were on scene[,] they were notified that there was an additional victim located at 743 Turner Street; that was Ms. Barbara Heinrich [("Heinrich"),] who was on the porch. Half of her body was in the vestibule area, and half was . . . leaning out towards a very small porch . . ..

Police backed up the ambulance containing [] Fordham and placed [] Heinrich inside that ambulance, where both were taken to Lehigh Valley Cedar Crest for immediate medical attention. [] Heinrich succumbed to the two gunshot wounds that were inflicted, and an autopsy was performed.

. . . [G]unshot wound number [one] entered through [] Heinrich's upper right back area. It exited through her ear and grazed the left side of her head causing internal injuries to her ear[,] and . . . an injury to her brain. That injury alone would have been fatal, even with immediate medical attention.

The second shot entered through [] Heinrich's lower right back. The path of the bullet was upwards[,] ripping through the kidneys and other internal organs, taking part of the liver, and lodged above her upper right breast. That bullet was removed . . . and subsequently tested . . ..

[] Fordham was treated in the emergency room. He was shot four times, once in the upper right chest, another in the upper left chest, and two shots both in the bottom left and bottom right torso. Bullets were removed from him[;] one remains in him and is located under his right armpit.

* * * *

[] Fordham required two surgeries for his medical injuries and was in the hospital . . . [for] approximately ten to fifteen days for the treatment that he received.

Through investigation[,] police learned that the shooter was an individual . . . known by the . . . nickname of ["]KA["]. There was a witness who was with [Rivera[2]] at the time of the shooting, and there was another individual who saw a person, matching

_____

[2] Rivera was sixteen years old at the time of the shootings.

[Rivera's] description, tucking a gun into his waistband and running from the scene.[3]

Once the police learned that KA was [] Rivera[,] photo lineups were shown to all those witnesses, including [] **Fordham[,] who positively identified . . . Rivera as the person who shot . . . Heinrich and [him].**

Police received information . . . that the gun used in this homicide was . . . traveling in a vehicle that was driven by a gentleman by the name of Luis Reyes [("Reyes")]. Police stopped . . . Reyes and recovered what was later determined . . . to be the weapon that fired the bullet . . . recovered from [] Heinrich, as well as the casings that were recovered at the scene.[4]

\* \* \* \*

[] Reyes indicated that he was aware that this gun had been used in a homicide, that . . . Rivera had shot people with this gun. He did not receive the gun from [] Rivera[;] he received it from another individual, and he was going to sell that gun to get rid of it.

\* \* \* \*

[Police later apprehended Rivera.] He was taken to police headquarters[,] where [officers] Mirandized[5 him]. **Initially, [] Rivera denied committing the crime, but he [later]**

---

[3] The affidavit of probable cause attached to the criminal complaint identified the person with Rivera at the time of the shooting as "Johnny Sweeney." Criminal Complaint, Affidavit of Probable Cause, 5/27/10, at 1. The witness who saw Rivera tucking a firearm into his waistband was a neighbor, Eric Newsome ("Newsome"), whose May 2010 statement to police is at issue in this appeal. **See** PCRA Pet., 5/2/23, Ex. A at 2 & Ex. B.

[4] Rivera maintains that the firearm recovered from Reyes and linked to the shooting of Fordham and Heinrich was a silver Ruger. We note that the trial court previously indicated that Rivera confessed to discarding the Ruger in a bag by a backdoor, sometime after shooting Fordham. **See** Opinion, 1/4/11, at 5.

[5] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

> *indicated that he . . . went to 743 Turner Street to collect at $400.00 drug debt.*
>
> *He indicated that he . . . fired . . . [and] believed he hit [] Fordham. He knew he hit [] Heinrich[;] she fell to the ground, he walked over, he fired another shot into her. He then chased [] Fordham through the apartment.*

* * * *

> [Fordham exited the apartment through the fire escape, crossed an alley] and went to the corner of 8th and Turner [Streets, where he was later found].

N.T., 1/10/11, at 16-22 (emphases added; some unnecessary capitalization omitted).

Rivera agreed that the factual basis, as stated above, was accurate. *See id*. at 23. He conceded guilt and admitted that he shot Fordham and Heinrich over a four-hundred-dollar drug debt. *See id*. Rivera acknowledged that by pleading guilty, he was giving up his right to appeal the trial court's denial of a pretrial motion he had filed seeking the suppression of his confession. *See id*. at 31-32. Rivera acknowledged he was entering his plea because he was guilty, and the trial court accepted his plea. *See id*. at 34. Rivera requested immediate sentencing, and during allocution, he apologized to his mother and advised, "Don't' feel guilty for nothin', everything I did was me, you know what I'm sayin'?" *Id*. at 35, 44. He additionally apologized to the Fordham and Heinrich families: ". . . I'm sorry for what I did, but I know it's not going to change nothin' . . .." *Id*. at 44-45.

The trial court sentenced Rivera to the agreed-upon aggregate sentence of forty to eighty years of imprisonment. *See id*. at 47-48. As this Court has previously concluded, Rivera's judgment of sentence became final on February 23, 2011, following the expiration of his time to appeal from the order modifying his judgment of sentence. *See Commonwealth v. Rivera*, No. 1459 EDA 2013, 2014 WL 11015566 (Pa. Super. 2014) (unpublished memorandum at *2).[6] Rivera filed five PCRA petitions, all of which the PCRA court dismissed as untimely and/or lacking merit. *See Commonwealth v. Rivera*, No. 1077 EDA 2019, 2019 WL 6499422 (Pa. Super. 2019) (unpublished memorandum at *1).[7]

_____

[6] The trial court's modification order struck the portion of the judgment of sentence recommending Rivera be housed at SCI-Pine Grove.

[7] In his first PCRA petition, Rivera alleged, *inter alia*, plea counsel coerced him into entering an involuntary plea because counsel was unprepared for trial and advised him a conviction for first-degree murder would carry a mandatory life-without-parole sentence. Plea counsel's advice concerning the sentencing consequences for first-degree murder was correct at the time of the plea, but was no longer the case after the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), approximately more than a year later. *See Rivera*, 2014 WL 11015566 (unpublished memorandum at *3).

We add that the PCRA court appointed counsel ("prior PCRA counsel") for Rivera's first PCRA proceeding and held an evidentiary hearing. At that hearing, Rivera did not proclaim his innocence or even deny shooting Fordham and Heinrich; rather, he asserted that killing Heinrich was a "mistake" and his confession did not support the statement that he walked over to Heinrich before shooting her a second time. *See* N.T., 2/4/13, at 17. Rivera expressed dissatisfaction with his negotiated sentence, because, in his view, he would have received a comparable sentence had he gone to trial and, therefore, did not benefit from his plea agreement. *See id*. at 17, 27. In response, the
*(Footnote Continued Next Page)*

- 5 -

On May 2, 2023, Rivera filed the instant *pro se* PCRA petition, his sixth. In this petition, Rivera acknowledged the facial untimeliness of the petition, but alleged he recently obtained a written copy of the statement by Newsome, the neighbor who saw Rivera tucking a firearm into his pants after the shootings, as well as one photo from surveillance camera footage. *See* PCRA Pet., 5/2/23, at 3; *see also id*., Exs. B, C1. Rivera emphasized Newsome's statement indicated that Rivera had fled the scene with a black firearm, which is an allegedly different color than the silver firearm used in the shooting; and the photo depicted someone other than Rivera in the area before the shooting. *See* PCRA Pet., 5/2/23, at 2-3. Construed generously, the *pro se* petition averred that Rivera first learned this evidence existed on May 13, 2022, after receiving and reviewing a replacement copy of discovery sent by the public defender's office. *See id*. at 3; *see also id*., Ex. A.[8] Rivera further asserted

---

Commonwealth called plea counsel to testify about his representation of Rivera and Rivera's decision to plead guilty. *See id*. at 43-56. The PCRA court ultimately determined that Rivera's first petition was not timely filed and, in any event, meritless. This Court affirmed the PCRA court's decision on timeliness grounds. *See Rivera*, 2014 WL 11015566 (unpublished memorandum at *3). In his four subsequent PCRA petitions, Rivera claimed diminished responsibility for the shootings, and he sought a reduction of the charges, a reduced sentence, or a withdrawal of his guilty plea. He did not allege his innocence in those filings.

[8] In support of his allegation that he received a replacement copy of discovery in May 2022, Rivera attached a cover letter, dated April 2022, from the public defender's office to a Department of Corrections attorney (the "April 2022 cover letter"). *See* PCRA Pet., 5/2/23, Ex. D. He also alleged that previous copies of discovery he had were incomplete and, in any event, destroyed in a
*(Footnote Continued Next Page)*

that his plea counsel, and his prior PCRA counsel, had this evidence, but concealed or misrepresented it, such that he could not have known it existed until he discovered it in May 2022. *See id*., Ex. A. Rivera claimed that he would not have pleaded guilty had he known this evidence existed. *See id*. Moreover, Rivera, for the first time since his conviction, asserted his innocence. *See* PCRA Pet., 5/2/23, at 4.

The PCRA court issued a Rule 907 notice, in which it concluded that Rivera's petition was facially untimely. *See* Rule 907 Notice, 6/29/23, unnumbered at 2. The PCRA court, however, indicated that if it accepted Rivera's pleadings regarding his discovery of the information as true, then his petition "would be timely pursuant to newly discovered facts exception." *See id*. at 2 n.7. The PCRA court concluded no relief was due because Rivera failed to meet a heightened standard for second or subsequent PCRA petitions, and the after-discovered evidence claims could not establish that the outcome of a new trial would have been different. *See id*. at 2-3 n.7.

Rivera filed a response to the PCRA court's Rule 907 notice, and the PCRA court dismissed the petition on July 26, 2023. Rivera timely appealed.[9]

_____

flood in 2020, which prompted him to seek the replacement copy through prison grievance proceedings.

[9] Rivera's envelope containing his notice of appeal is dated August 22, 2023, though the notice of appeal itself was not time-stamped until August 28, 2023. We deem Rivera's notice of appeal timely filed. *See* Pa.R.A.P. 121(f) (providing that the date of filing for an incarcerated *pro se* person is, *inter*
*(Footnote Continued Next Page)*

Although the PCRA court ordered the filing of a Pa.R.A.P. 1925(b) statement, none appears in the record. When transmitting the record to this Court, the PCRA court noted Rivera had not filed a Rule 1925(b) statement, but authored a separate Rule 1925(a) opinion, wherein it concluded, for the first time, that Rivera failed to file his petition within one-year of the time the claim could have been presented and failed to prove the evidence could not have been obtained earlier by the exercise of reasonable diligence. *Compare* Order, 7/26/23, at 2-3 n.7 *with* PCRA Court Opinion, 9/27/23, at 3-5. The PCRA court also determined that even if it could exercise jurisdiction over Rivera's petition, Rivera would be due no relief on the after-discovered evidence claims. *See* PCRA Court Opinion, 9/27/23, at 3-5.

Rivera raises the following issues for our review:

1. Did the PCRA court err in concluding that [Rivera's] claims in [were] waived for falsely alleging that he failed to file a "Concise Statement of Errors" . . .?

2. Did the PCRA court err in concluding that [Rivera's] PCRA petition is patently untimely . . .?

3. Did the PCRA court err in concluding that [Rivera's] PCRA petition . . . was . . . patently untimely for it was not filed within the one-year time frame required by the newly discovered facts exception . . .?

4. Did the PCRA court err in concluding that [Rivera's] PCRA petition . . . did . . . not meet the newly discovered facts exception . . .?

_____

*alia*, the postmark date, also referred to as the "prisoner mailbox rule," ***Commonwealth v. Little***, 716 A.2d 1287, 1289 (Pa. Super. 1998)).

5. Did the PCRA court err in concluding that [Rivera's] PCRA petition did . . . not meet the newly discovered facts timeliness exception, for after review of the petition it was allegedly discovered that [Rivera's] PCRA petition does not contain any genuine issues of material fact, and that as a second or subsequent PCRA, it fails to establish a strong prima facie case showing that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice has occurred which no civilized society could tolerate, or that he [was] innocent of the crimes to which he was charged?

6. Did the PCRA court err in concluding that [Rivera's] PCRA petition did . . . not meet the newly discovered evidence exception codified at 42 Pa.C.S.[A.] § 9543(a)(2)(vi), for the newly discovered evidence of photographs of the alleged shooter (which is not [Rivera]) d[id] not establish innocence; for there [wa]s an overwhelming amount of evidence to support the claim that he had committed, and was guilty of the crimes to which he was charged?

7. Did the PCRA court err in concluding that [Rivera's] PCRA. petition did . . . does not meet the newly discovered evidence exception codified at 42 Pa.C.S.[A.] § 9543(a)(2)(vi), for the newly discovered evidence of an eyewitness, who had proclaimed to have seen the shooting, seen the petitioner fire a gun that was not the actual murder weapon d[id] not establish innocence; for there is an overwhelming amount of evidence to support the claim that he had committed, and was guilty of the crimes to which he was charged?

8. Did the PCRA court err in concluding that [Rivera's] PCRA petition did and or does not meet the newly discovered evidence exception codified at 42 Pa.C.S.[A.] § 9543(a)(2)(vi), for [Rivera] has failed to show that the newly discovered evidence alleged to have been discovered in this here matter could not have been obtained for more than a decade by the exercise of due diligence. For the statement was in the public defender['｣s file and was available throughout the guilty plea and sentencing as well as numerous PCRA proceedings. It was allegedly an obvious source of information?

Rivera's Brief at 4-6 (unnecessary capitalization and some formatting omitted).

We need not discuss Rivera's first issue—concerning the possibility of waiver under Rule 1925—at length. While the PCRA court issued a Rule 1925(b) order, it was "unenforceable" because it did not strictly comply with Rule 1925 in that it did not specify the address to which Rivera's Rule 1925(b) statement could be mailed. *See Commonwealth v. Stroud*, 298 A.3d 1152, 1156-57 (Pa. Super. 2023) (declining to find waiver where the appellant failed to file a 1925(b) statement, but the lower court did not strictly comply with the content requirements of Pa.R.A.P. 1925(b)(3)); *see also* Pa.R.A.P. 1925(b)(3)(iii). Therefore, we do not find waiver under Rule 1925. *See Stroud*, 298 A.3d at 1156-57.[10]

In his second, third, fourth, and eighth issue, Rivera next assets the PCRA court erred when concluding that he failed to establish a timeliness exception under the PCRA.

Our standard of review of an order dismissing a PCRA petition is well-settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal

_____

[10] We add that Rivera presents this Court with reasonably verifiable proof that he timely deposited a Rule 1925(b) statement with prison officials for filing. *See* Rivera's Brief, at Exs. E-F; *see also Little*, 716 A.2d at 1289 (discussing the prisoner mailbox rule). This Court may remand for the PCRA court to determine whether Rivera timely filed his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(c)(1). However, remand under the circumstances of the appeal would frustrate judicial economy because the PCRA court has explained its reasons for dismissing the instant petition. *Cf*. *Commonwealth v. Chester*, 163 A.3d 470, 472 (Pa. Super. 2017).

error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." ***Id***. at 145 (internal citation omitted). ***See also Commonwealth v. Towles***, 300 A.3d 400, 417 (Pa. 2023).

Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. ***See Commonwealth v. Albrecht***, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider an untimely PCRA petition if the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii), and he filed his PCRA

petition invoking a timeliness exception within one year of the date the claim could have been presented. ***See*** 42 Pa.C.S.A. § 9545(b)(2).[11]

The newly-discovered facts exception in section 9545(b)(1)(ii) provides that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). The focus of the newly-discovered facts exception is on new facts; therefore, the discovery of new sources for previously known facts will not establish a timeliness exception. ***See Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008). Due diligence demands that the petitioner take reasonable efforts to protect his own interests and explain why he could not have learned the new facts earlier despite such efforts. ***See Commonwealth v. Medina***, 92 A.3d 1210, 1216 (Pa. Super. 2014) (*en banc*). The petitioner's inability to ascertain a fact by the exercise of due diligence is a factual question for the PCRA court. ***See Commonwealth v. Branthafer***, 315 A.3d 113, 128 (Pa. Super. 2024).

---

[11] The PCRA court in its Rule 1925(a) opinion, asserted that Rivera failed to file the instant petition within one year of discovering the evidence in April 2022. The court's assertion, however, rests on a misreading of the April 2022 cover letter indicating that the public defender's office sent the replacement copy of discovery to the Department of Corrections. Rivera argues in his third issue, and we agree, that the April 2022 cover letter does not establish the date Rivera received the replacement discovery from the Department of Corrections. ***See*** Rivera's Brief at 20-23. Therefore, we do not rely on the analysis in the PCRA court's Rule 1925(a) opinion that Rivera failed to file the instant petition within one year of the April 2022 cover letter. ***See*** PCRA Court Opinion, 9/27/23, at 3.

Rivera maintains that he properly pleaded the newly-discovered facts exception by asserting that he was unaware of the existence of evidence—*i.e.* Newsome's statement and the surveillance camera photo—until he received the replacement copy of discovery in May 2022. **See** Rivera's Brief at 15, 19-20, 22. He argues he lost his earlier copies in 2020, and he insists that he had "never seen, or even knew" of, the subject evidence until he received the replacement copy of discovery. **Id**. at 25. He further asserts that plea counsel withheld the evidence from him or misrepresented the evidence as being inculpatory, rather than exculpatory, to coerce his plea. **See id**. at 15, 23, 27, 29-30. As to due diligence, he contends he consistently, but unsuccessfully, sought discovery through the PCRA court; he had no independent access to the public defender's case file; and he lacked any control over what evidence the public defender elected to send him. **See id**. at 31. He adds that because plea counsel concealed the evidence or misrepresented the contents of the evidence, he had no reason to believe the evidence existed or contained information necessary to raise his claims of innocence, plea counsel's ineffectiveness, or the unlawful inducement of his plea. **See id**. at 20, 23, 31.

The PCRA court addressed the newly-discovered facts exception but, as noted above, reached inconsistent determinations. On the one hand, the PCRA court initially concluded that Rivera's assertions, if true, would meet the newly-discovered facts exception. **See** Rule 907 Notice, 6/29/23,

- 13 -

unnumbered at 2 n.7; *see also* Order, 7/26/23, unnumbered at 2 n.7. On the other hand, the PCRA court asserted in its Rule 1925(a) opinion that Rivera failed to exercise due diligence because he only alleged he lost earlier copies of discovery in 2020 and then received the replacement copies of discovery, which allegedly contained Newsome's statement and the surveillance camera photo. *See* PCRA Court Opinion, 9/27/23, at 3. The PCRA court reasoned that Rivera failed to prove that he could not have obtained the subject evidence through the exercise of reasonable diligence because the statement was in the public defender's file and available throughout the guilty plea and sentencing hearings, as well as numerous PCRA proceedings. *See id*. at 5.

A review of the record belies Rivera's assertions that he established a time-bar exception and supports the PCRA court's determination that Rivera failed to exercise due diligence. Rivera possessed all facts necessary to claim his innocence at the time of his plea (*i.e.*, the factual assertions that he was in possession of a black gun, not the alleged silver gun used in the shooting, and that someone else was in the vicinity around the time of the shooting and committed the shooting). Notwithstanding that Rivera would have been aware of these asserted facts from the time of the shooting, he did not assert them, or his innocence, for more than a decade after his conviction. Thus, Newsome's statement and the photo constitute newly discovered sources of information, not new facts concerning his innocence. *See Marshall*, 947 A.2d at 720; *Branthafer*, 315 A.3d at 129-31 (holding alleged newly-discovered

witnesses concerning a defendant's location at the time of the offense was a newly-discovered source that did not state a timeliness exception; the defendant's "own whereabouts on the evening of the incident were always known to him, as it cannot seriously be asserted that [the defendant] did not know his physical location on the night in question").

Moreover, Rivera's claim that he did not have an earlier opportunity to review complete discovery contradicts his plea counsel's prior testimony. At the hearing on Rivera's first PCRA petition, plea counsel testified that he and Rivera reviewed discovery before Rivera entered his guilty pleas and counsel made copies of most of the discovery in his possession. *See* N.T., 2/4/13, at 47-49.[12] The record also shows that both plea counsel and the Commonwealth brought their case files to the hearing on Rivera's first PCRA petition and provided PCRA counsel and the court with copies of different materials in their files. *See id*. at 69-75. Despite complaining about the lack of discovery at that hearing, *see id*. at 19, Rivera did not request prior PCRA counsel to obtain more complete discovery at that time.[13]

_____

[12] Plea counsel testified he was unable to play a video from the surveillance cameras for Rivera. However, plea counsel informed Rivera that the video was available to watch at the courthouse before Rivera entered a plea. *See* N.T., 2/4/13, at 48. At the hearing, plea counsel confirmed that the video showed Rivera at the scene. *See id*. at 49. It is unclear whether the photo Rivera relies on is the same video image to which plea counsel referred.

[13] To the extent Rivera asserted a governmental interference timeliness exception based on plea and prior PCRA counsel's ineffectiveness, *see* PCRA
*(Footnote Continued Next Page)*

In sum, these circumstances undermine Rivera's claim that he recently discovered new facts pursuant to section 9545(b)(1)(ii), and support the PCRA court's alternate determination that Rivera did not exercise due diligence. As there is record support for the PCRA court's findings and the PCRA court's conclusions are free from legal error, we affirm, albeit on a slightly different basis. *See Staton*, 184 A.3d at 954; *Wholaver*, 177 A.3d at 145.[14]

_____

Pet., 5/2/23, at 3, it is well-established that the actions of defense counsel do not constitute governmental interference. *See* 42 Pa.C.S.A. § 9545(b)(4); *Commonwealth v. Abu-Jamal*, 833 A.2d 719, 733 (Pa. 2003). Additionally, claims of prior PCRA counsel's ineffective assistance do not establish a timeliness exception unless Rivera can demonstrate abandonment by PCRA counsel. *See Commonwealth v. Pursell*, 749 A.2d 911, 915-16 (Pa. 2000); *accord Commonwealth v. Peterson*, 192 A.3d 1123, 1130 (Pa. 2018). He has not done so here.

[14] Even had Rivera established the PCRA court had jurisdiction over his petition, Rivera would be due no relief under his theories of ineffective assistance of plea counsel or after-discovered evidence. As with all claims of ineffective assistance of counsel, the petitioner bears the burden of demonstrating (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis designed to effectuate the petitioner's interests for the act or omission in question; and (3) that counsel's ineffectiveness actually prejudiced the petitioner. *See Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007). To obtain a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test of demonstrating: (1) he could not obtain the evidence prior to the conclusion of the trial by the exercise of reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely to impeach the credibility of a witness; and (4) the evidence would likely result in a different verdict if a new trial were granted. *See Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018); *see also Commonwealth v. Mach Transport, LLC*, 305 A.3d 22, 27 (Pa. Super. 2023) (stating that the after-discovered evidence doctrine also applies to evidence discovered after a guilty plea that meets these four standards).

*(Footnote Continued Next Page)*

For these reasons, Rivera is due no relief.[15]

Order affirmed. Application for relief denied.

_____

Here, as noted above, Rivera previously litigated a claim concerning plea counsel's ineffectiveness in connection with his guilty plea, and plea counsel testified that he and Rivera reviewed discovery at the county jail, with the exception of the surveillance camera video, which plea counsel made available for Rivera to review at the county courthouse. *See* N.T., 2/4/13, at 47-49. Plea counsel further testified he made copies of all discovery he could copy. Furthermore, Rivera not only confessed pre-trial to shooting and killing Heinrich, and shooting and severely injuring Fordham, but he reaffirmed those facts when pleading guilty. *See* N.T., 1/10/11, at 16-23. Additionally, Fordham, who survived the shooting, identified Rivera as the shooter. *See id*. at 18. Thus, any inconsistency between the alleged after-discovered evidence (*i.e.*, Newsome's statement about the color of the gun and a photo from before the shooting depicting someone other than Rivera in the area) were minor. Having reviewed the record, we agree with the PCRA court that Rivera could not establish that the outcome at a new trial would be different. *See Mach Transport*, 305 A.3d at 27 (stating that an after-discovered evidence claim requires, *inter alia*, a showing that a different verdict would likely have resulted for the evidence to warrant withdrawal of the guilty plea). Moreover, we discern no issues of fact concerning Rivera's claim that plea counsel's ineffectiveness resulted in the entry of an unknowing or involuntary plea. *See Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (stating that the law does not require an appellant be pleased with the results of the decision to enter a guilty plea, but rather, the decision must be knowingly, voluntarily, and intelligently made).

[15] Also, Rivera has filed an application for relief in this Court, namely a petition for leave to amend his PCRA petition pursuant to Pa.R.Crim.P. 905. Rule 905 permits the amendment of a timely, *pending*, PCRA petition. *See Commonwealth v. Crispell*, 193 A.3d 919, 929 (Pa. Super. 2018). However, Rivera's petition is no longer pending, as it has been dismissed. In any event, Rivera fails to specify what amendments he seeks to make to his dismissed petition. Accordingly, we deny the application for relief.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/02/2024